# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| LIESELOTT E. WIENDIECK, | | CASE NO. 3:16–cv–00034 |
| | *Plaintiff,* | |
| v. | | MEMORANDUM OPINION |
| WELLS FARGO BANK, N.A., | | |
| | *Defendant.* | JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss (dkt. 4) and Plaintiff Lieselott Wiendieck's motion to remand (dkt. 6).

The Court has diversity jurisdiction over the subject matter. Wiendieck is a citizen of Virginia and Wells Fargo is a citizen of South Dakota, and the amount in controversy exceeds $75,000.[1]

Plaintiff alleges she has a lifetime lease on her residence and that she may, despite Wells Fargo's foreclosure on the property, remain there pursuant to Va. Code § 55-225.10(C), which incorporates portions of The Protecting Tenants at Foreclosure Act. Section 55-225.10(C) requires the payment of rent, and because Wiendieck's lease is "rent-free," *see* Compl. ¶ 9, the I find that she is not entitled to enforce her rent-free lease against Wells Fargo.

Accordingly, Wiendieck's motion to remand will be denied and Wells Fargo's motion to dismiss will be granted.

---

[1] Using the annuity table found in Va. Code § 55-269.1, I calculate the value of Wiendieck's effective "life tenancy" between $131,394.80 and $83,949.60. Each valuation satisfies 28 U.S.C. § 1332's amount in controversy requirement.

# I. FACTS AS ALLEGED AND PROCEDURAL HISTORY

In 2004, Wiendieck sold her home in Greene County, Virginia, to Lawrence and Marlene Eagleburger, who financed the purchase price with a loan from Wells Fargo. The loan was secured by a deed of trust. In 2007, "[a]s part of the consideration for the purchase[,]" the Eagleburger's entered into a written, but unrecorded, "lifetime, rent-free lease" of the home. Compl. ¶ 9; *see also* Docket No. 1, Ex. D, at 10 ("No annual base rent shall be paid under this Lease."). The Eagleburgers died and their heirs defaulted on the Wells Fargo loan. Wells Fargo foreclosed on the property and bought it at an auction on December 16, 2015.

On May 13, 2016, Wells Fargo brought an unlawful detainer action against Wiendieck in the Greene County General District Court. On May 29, 2016, Wiendieck filed an action in the Greene County Circuit Court against Wells Fargo seeking specific performance and a permanent injunction preventing Wells Fargo from interfering with her rights under the lease. On June 3, 2016, Wells Fargo removed Wiendieck's action to this court and filed a motion seeking to dismiss Wiendieck's claim.

# II. MOTION TO REMAND

Wiendieck argues that this action should be remanded because: (1) the parties should be realigned such that Wells Fargo is the plaintiff; (2) the Anti-Injunction Act prevents removal; (3) the prior exclusive jurisdiction doctrine bars removal; and (4) Wells Fargo has waived its right to remove. All of these arguments fail.

## A. REALIGNMENT

Wiendieck argues that the parties in this case should be realigned such that Wells Fargo is considered the plaintiff and Wiendieck the defendant. Accordingly, as a plaintiff, Wells Fargo

- 2 -

would be unable to remove under Section 1441. *See* 28 U.S.C. § 1441(a) ("[A]ny civil action . . . may be removed *by the defendant or the defendants* . . . .") (emphasis added).

1. Applicable Law

Federal law determines who is a defendant under Section 1441, *see Chicago, R.I. & P.R. Co. v. Stude*, 74 S. Ct. 290, 294 (1954), and so "the state court caption is not always determinative of which party is the plaintiff and which is the defendant for removal purposes." *Williamsburg Plantation, Inc. v. Bluegreen Corp.*, 478 F. Supp. 2d 861, 864 (E.D. Va. 2006).

A party is properly considered a plaintiff where "the institution and continuance of the proceedings depend upon [that party's] will." *Mason City & Ft. D.R. Co. v. Boynton*, 27 S. Ct. 321, 323 (1907). In determining whether to realign parties, the Fourth Circuit applies the "principal purpose" test, which requires courts to "determine the primary issue in controversy" and then "align the parties according to their positions with respect to the primary issue." *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008).

The Supreme Court has generally confined realignment to contexts where a state statute designates a party as plaintiff or defendant irrespective of whether the party instituted the proceeding. For instance, in *Stude*, a railroad seeking to condemn property instituted proceedings in state court. The railroad was, pursuant to state statute, styled as the defendant, while the property owner was styled as the plaintiff, even though the railroad initiated the suit. 74 S. Ct. at 293. After commencing the suit, the railroad sought removal to the federal district court.

The Court found removal improper. Though styled as the defendant, the railroad had instituted the proceedings and sought legal relief (condemnation). The Court therefore found that the railroad was more properly considered the plaintiff because "the institution and continuance of the proceedings depend[ed] upon its will." *Id.* at 294; *see also Mason City*, 27 S. Ct. at 324

- 3 -

("The intent of the railroad to get the land is the mainspring of the proceedings from beginning to end, and the persistence of that intent is the condition of their effect.").

    2.  Discussion

Applying the principal purpose test, it is evident from Wiendieck's complaint that the primary issue in controversy is whether Wiendieck may compel Wells Fargo to honor her lease. It is Wiendieck who seeks relief, and so the "mainspring" of this case is Wiendieck's desire to obtain specific performance and an injunction. Accordingly, "the institution and continuance of the proceedings depend upon [her] will." *Stude*, 74 S. Ct. at 294.

Moreover, Wiendieck is most analogous to the railroads in *Stude* and *Mason City*. Like the railroads, she instituted this proceeding, and she is the party who seeks a legal award. Wells Fargo, like the landowners, seeks only to defend. The parties are, therefore, properly "align[ed] . . . according to their positions with respect to the primary issue." *Palisades*, 552 F.3d at 337.

Wiendieck nevertheless claims that Wells Fargo should be considered the plaintiff because its now-dismissed unlawful detainer action was "'the mainspring of the proceedings' now before the Court." Docket No. 19, at 7. Her implicit premise—that the court, in determining the primary issue in controversy in *this* case should look to *another case*—is not supported by case law. *See Brave Ventures, LLC v. Ambrester*, 854 F. Supp. 2d 356, 358 (E.D. Va. 2012) (ignoring related, earlier-filed state court proceeding between same parties and considering only "[t]he primary issue addressed in the complaint."); *see also Stude*, 74 S. Ct. at 294 (considering only the complaint before the Court); *Mason City*, 27 S. Ct. at 324 (same); *Palisades*, 552 F.3d at 337 (same). Wiendieck's desire to obtain specific performance and a permanent injunction is the

- 4 -

mainspring of *this* case, and therefore the parties are properly aligned according to their positions with respect to whether Wiendieck can enforce her lease against Wells Fargo.

B. Anti-Injunction Act

The Anti-Injunction Act, 28 U.S.C. § 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." Because Wiendieck's state court lawsuit sought an injunction of Well Fargo's unlawful detainer proceeding, another proceeding in state court, Wiendieck argues that the Anti-Injunction Act stripped this Court of original jurisdiction, and therefore she could not have originally filed her action in this Court. *See Caterpillar, Inc. v. Williams*, 107 S. Ct. 2425, 2429 (1987) ("Only state-court actions that *originally* could have been filed in federal court may be removed to federal court by the defendant.") (emphasis added).

Wiendieck's position that the Anti-Injunction Act is jurisdictional is, however, incorrect. The Fourth Circuit has held that Section 2283 "is not a jurisdictional statute." *Baines v. City of Danville*, 337 F.2d 579, 593 (4th Cir. 1963) (citing *Smith v. Apple*, 44 S. Ct. 311 (1924)); *see also Mooney Aircraft Corp. v. Foster*, 730 F.2d 367, 373 (5th Cir. 1984) ("The Anti-Injunction Act is not a jurisdictional statute, but goes only to the granting of a particular form of equitable relief."). Instead, jurisdiction of this case, pursuant to 28 U.S.C. § 1441, is based upon diversity jurisdiction, pursuant to 28 U.S.C. § 1332. *Williams*, 107 S.Ct. at 2429 (describing diversity jurisdiction as a form of original jurisdiction in district courts over state-court actions). Because Wiendieck is a citizen of Virginia and Wells Fargo is a citizen of South Dakota, and the amount in controversy exceeds $75,000, 28 U.S.C. §§ 1332 and 1441(a) are satisfied.

- 5 -

Furthermore, this Court will not "grant an injunction to stay proceedings in a State court." Instead, the state court proceeding that Wiendieck argues would be stayed—Well Fargo's unlawful detainer action—no longer exists. "[T]he unlawful detainer action was nonsuited by Wells Fargo. . . on June 22, 2016." Dkt. 12 at 6.

C. PRIOR EXCLUSIVE JURISDICTION

Wiendieck also argues that a remand is warranted under the prior exclusive jurisdiction doctrine. The doctrine provides that "when one court is exercising *in rem* jurisdiction over a *res*, a second court will not assume *in rem* jurisdiction over the same *res*." *Marshall v. Marshall*, 126 S. Ct. 1735, 1749 (2006); *see also Kline v. Burke Const. Co.*, 43 S. Ct. 79, 81 (1922) ("[W]here the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction.").

The doctrine applies, however, "*only* if a state court has previously exercised jurisdiction over that same property *and retains* jurisdiction in a separate, concurrent proceeding." *Sexton v. NDEX West, LLC*, 713 F.3d 533, 537 (9th Cir. 2013) (emphasis added). Here, the state court no longer retains jurisdiction over the same property as Wells Fargo's unlawful detainer action was voluntarily dismissed, and therefore the prior exclusive jurisdiction doctrine does not apply.

Wiendieck nevertheless argues that the court should "examine[] the record of the state court action as it st[ood] at the time the notice of removal [was] filed with the federal court." Docket No. 19, at 3 (quotation marks omitted). Wiendieck argues that because Wells Fargo's unlawful detainer action was pending in state court at the time of removal, the court should decline jurisdiction on the basis of the prior exclusive jurisdiction doctrine.

It is true that in determining whether *jurisdictional facts* are satisfied—such as the amount in controversy, the diversity of the parties, or the nature of the plaintiff's claims—the

- 6 -

propriety of removal is "determined according to the plaintiff's pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)).

This general rule does not, however, bar a court from considering whether the first court still "maintain[s] and exercise[s]" its jurisdiction. *Gross v. Weingarten*, 217 F.3d 208, 221 (4th Cir. 2000) (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939)); *see also Sexton*, 713 F.3d at 537 (noting that the doctrine applies "only if . . . [the state court] retains jurisdiction in a separate, concurrent proceeding."). This principle is illustrated in *Bergsrud v. Bank of America, N.A.*, No. 2:13–CV–998, 2014 WL 280920 (D. Nev. Jan. 23, 2014).

In *Bergsrud*, the plaintiff, "[d]eparting from the ordinary application of the [prior exclusive jurisdiction] doctrine," requested the federal district court to remand to state court "even though the state court action regarding the property ha[d] been dismissed." 2014 WL 280920, at *1. Plaintiff argued that "defendants [were] trying to avoid the application of the prior-exclusive-jurisdiction doctrine by dismissing their action in state court, [and accordingly] that they should be 'estopped from unilaterally creating jurisdiction.'" *Id.*

The court rejected this argument, reasoning that "a party's dismissal of a state court action involving property that is at the heart of an ongoing case in federal court alleviates problems of federalism and possible discord between the courts." *Id.* at *2. Accordingly, "because the action in Nevada state court involving the property that [was] at the heart of this case ha[d] been dismissed, the prior-exclusive jurisdiction doctrine d[id] not apply . . . ." *Id.*

The same reasoning applies here. Wells Fargo's underlying unlawful detainer action has been dismissed, and so the prior exclusive jurisdiction doctrine's concerns with "comity between courts," which can be "compromised by state and federal judicial systems attempting to assert concurrent control over the *res* upon which jurisdiction of each depends," *see United States v.*

- 7 -

*One 1985 Cadillac Seville*, 866 F.2d 1142, 1145 (9th Cir. 1989), are not implicated. Simply put, the principle that "the jurisdiction of the one court must yield to that of the other" is inapplicable as only *one* court—this Court—has jurisdiction at this time. *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939). To illustrate, a remand in this case would not resurrect Wells Fargo's unlawful detainer action. Instead, the state court would only proceed with the instant action because it is the only pending action for relief. Thus, the prior exclusive jurisdiction doctrine does not require a remand to state court.

D. WAIVER

Finally, Wiendieck argues that Wells Fargo has waived its ability to remove. A defendant has waived its right to remove where it has "evinced a 'clear and unequivocal intent' to remain in state court . . . ." *Grubb v. Conegal Mut. Ins. Co.*, 935 F.2d 57, 59 (4th Cir. 1991).

Clear intent to remain in state court is shown when a defendant takes "substantial defensive action" before removal. *Aqualon Co. v. Mac Equip., Inc.*, 149 F.3d 262, 264 (4th Cir. 1998). A defendant does not waive "by filing a pleading in state court that raises a conclusive defense; waiver requires some further action by the defendant that results in a decision on the merits of the case." *Sayre Enterprises, Inc. v. Allstate Ins. Co.*, 448 F. Supp. 2d 733, 736 (W.D. Va. 2006). Accordingly, "filing an answer and grounds of defense, a motion craving oyer and demurrer, and objections to the plaintiff's first set of discovery requests" do not constitute substantial affirmative or defensive action. *Id.* Ultimately, "waiver should only be found in extreme circumstances." *Id.* at 735.

Wiendieck argues that Wells Fargo has evinced a clear and unequivocal intent to remain in state court because Wells Fargo (1) filed an unlawful detainer action in state court and (2) suggested in its motion to dismiss that certain issues in the unlawful detainer action should be

- 8 -

resolved by the state court. Wiendieck's arguments, however, do nothing more than obfuscate the central question, which is whether Wells Fargo, *in this case*, had taken "substantial defensive action" before removing. *See Sayre*, 448 F. Supp. 2d at 735 (quoting *Aqualon*, 149 F.3d at 264).

Here, it is undisputed that the state court, prior to removal, had made no decision on the merits of the case. Moreover, Wells Fargo filed only a demurrer, but this is not sufficient to constitute substantial defensive action. *See Sayre*, 448 F. Supp. 2d at 736. Wiendieck has therefore not shown that Wells Fargo took "substantial defensive action" before removing, *id.* at 735, and so remand is not warranted.

### III.   MOTION TO DISMISS

#### A.   STANDARD OF REVIEW

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without converting the motion into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Therefore, because the lease is referenced in Wiendieck's complaint and available for review, the Court's analysis hinges, as a pure question of law, on whether Wiendieck has stated a claim upon which relief can be granted pursuant to Va. Code § 55-225.10(C).

#### A.   VA. CODE § 55-225.10(C)

Wiendieck's demand for a permanent injunction and specific performance is contingent on whether Wells Fargo is obligated to honor her lease agreement. She argues that Va. Code §

- 9 -

55-225.10(C) requires Wells Fargo to honor her lease despite Wells Fargo being a non-party to the agreement.

Va. Code § 55-225.10(C) provides that:

If the dwelling unit is foreclosed upon and there is a tenant lawfully residing in the dwelling unit on the date of foreclosure, the tenant may remain in such dwelling unit as a tenant only pursuant to the Protecting Tenants at Foreclosure Act, P.L. No. 111-22, § 702, 123 State. 1632, 1660 (2009), and provided the tenant remains in compliance with all of the terms and conditions of the lease agreement, including payment of rent.

1. Validity of Section 55-225.10(C)

The Protecting Tenants at Foreclosure Act ("Tenant Act") contained a sunset provision providing that "[t]his Title, and any amendments made by this title are repealed, and the requirements under this title shall terminate, on December 31, 2012." P.L. No. 111-22, § 704, 123 Stat. 1632, 1662. Because Va. Code Section 55-225.10 incorporates the Tenant Act, and because the act has expired,[2] Wells Fargo argues that "Virginia law does not provide the Plaintiff any protection under an expired law." Docket No. 15, at 2. This argument fails.

"In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Ramey v. Director, O.W.C.P.*, 326 F.3d 474, 476 (4th Cir. 2003). Section 55-225.10 is clear that it incorporates "Protecting Tenants at Foreclosure Act, P.L. No. 111-12, *§ 702*, 123 Stat. 1632, *1660* (2009)." Va. Code § 55-225.10(C) (emphasis added). By its plain terms, the Virginia Code incorporates only Section 702 of the Tenant Act, located at 123 Stat. 1632, 1660. The Tenant Act's sunset provision was located at *Section 704*, 123 Stat. 1632, *1662*.

---

[2] The Tenant Act's sunset provision was extended by the Mortgage Reform and Anti-Predatory Lending Act, Pub. L. No. 111-203, § 1484, 124 Stat. 1376, 2204 (2010). The Tenant Act ultimately expired on December 31, 2014.

The Virginia Supreme Court emphasizes that "[w]hen [a Virginia] statute adopts another by specific reference, only those particular parts of the statute referred to are incorporated." *Rollins v. Town of Gordonsville*, 215 S.E.2d 637, 637 (Va. 1975). Accordingly, because the Virginia Code referred only to Section 702 of the Tenant Act, only Section 702 was incorporated. Virginia's General Assembly therefore did not incorporate the Tenant Act's sunset provision located at Section 704.

That the Tenant Act may have subsequently been repealed or lapsed does not affect the validity of Va. Code § 55-225.10. "It is well settled that where a statute incorporates another, and the one incorporated is thereafter amended or repealed, the scope of the incorporating statute remains intact and 'no subsequent legislation has ever been supposed to affect it.'" *United States ex rel. Kessler v. Mercur Corp.*, 83 F.2d 178, 180 (2d Cir. 1936) (quoting *Kendall v. United States ex rel. Stokes*, 37 U.S. 524, 625 (1838)); *see also Sutherland Statutes and Statutory Construction* § 23:33 (6th ed. 2002) ("As neither statute depends upon the other's enactment for its existence, the repeal of the provision in one enactment does not affect its operation in the other statute."). Va. Code § 55-225.10(C) therefore remains in force.

2. Applicability of Section 55-225.10(C)

Wells Fargo argues that even if Va. Code § 55-225.10 remains in force, Wiendieck has failed to state a cause of action. Again, Va. Code § 55-225.10(C) provides that a tenant may reside in a foreclosed unit "only pursuant to the [Tenant Act], and provided the tenant remains in compliance with all of the terms and conditions of the lease agreement, including payment of rent." Accordingly, in order to evaluate a claim under Va. Code § 55-225.10(C), the court must look to the standards set forth in the Tenant Act.

- 11 -

The Tenant Act provides that in the case of a foreclosure, the successor in interest will assume such interest "subject to the rights of any *bona fide tenant*." P.L. 111-22, § 702(a)(2), 123 Stat. 1632, 1660–61 (emphasis added). Under the Tenant Act, "a lease or tenancy [is] considered bona fide *only if* . . . the lease or tenancy *requires the receipt of rent* that is not substantially less than fair market rent for the property." *Id.* at § 702(b)(3) (emphasis added).

Wiendieck concedes that she does not pay rent on the property; she nevertheless argues, citing Black's Law Dictionary,[3] that rent need not consist of regular, determined payments. Furthermore, she argues that "[t]he consideration [Plaintiff] provided in exchange for the lifetime lease (the conveyance of her entire real estate holdings) was every bit as substantial as monthly rent." Docket No. 10, at 7.

Wiendieck's argument is, however, belied by the plain text of the lease agreement. The agreement provides that "[n]o annual base rent shall be paid under this Lease." Docket No. 1, Ex. D, at 10. Indeed, Wiendieck pleads in her complaint that she "entered into a lifetime, rent-free lease." Compl. ¶ 9. The Tenant Act requires that a lease or tenancy "require[] the receipt of rent that is not substantially less than fair market rent for the property." Tenant Act at § 702(b)(3). Here, Wiendieck pays zero rent, and therefore her lease requires far less rent than the fair market rent for the property.

Moreover, allowing Wiendieck to enforce her lease under the Tenant Act would upset the balance Congress sought to achieve in the Act. On the one hand, the Tenant Act "protects tenants who are the victims of the foreclosure crisis," *Nativi v. Deutsche Bank Nat. Trust Co.*, No. 09-06096, 2010 WL 2179885, at *3 (N.D. Cal. May 26, 2010) (citing 155 CONG. REC. S5096-7 (daily ed. May 5, 2009)), by "ensur[ing] that tenants receive appropriate notice of foreclosure

---

[3] *See* Black's Law Dictionary 1322 (8th ed. 2004) (defining "rent" as "consideration paid, *usu[ally]* periodically, for the use or occupancy of property (esp[ecially] real property)) (emphasis added).

and are not abruptly displaced." *Protecting Tenants at Foreclosure: Notice of Responsibilities Placed on Immediate Successors in Interest Pursuant to Foreclosure of Residential Property*, 74 Fed.Reg. at 30106.

On the other hand, the Act seeks to ensure that a successor in interest receives some return on their investment. To ensure a value is received, Congress requires a *bona fide* tenant to pay "rent that is not substantially less than fair market rent for the property." Tenant Act, § 702(b)(3). However, here, Wiendieck does not pay rent and allowing her to enforce her lifetime lease would leave Wells Fargo, the successor in interest, with no return for an indefinite period of time. Therefore, she cannot state a claim under Va. Code § 55-225.10.

B. REQUESTS FOR SPECIFIC PERFORMANCE AND A PERMANENT INJUNCTION

Wiendieck requests that the Court order Wells Fargo to "specifically perform its duties under [her] lease as successor in interest to the prior owners of the property." Compl. ¶ 21. She also seeks a permanent injunction preventing any future attempt by Wells Fargo to evict her or to sell the property. As discussed, *supra*, Wiendieck cannot state a claim under Va. Code Section 55.225.10(C), and accordingly her requests for specific performance and for a permanent injunction will be denied. *See Robertson v. Gilbert*, 249 S.E.2d 787, 789 (Va. 1978) ("To invoke [specific performance], the complainant must first prove a contract enforceable at law."); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999) ("Actual success on the merits of a claim is required for a permanent injunction.").

IV.    CONCLUSION

For the above stated reasons, Wiendieck's motion to remand will be denied and Wells Fargo's motion to dismiss will be granted.

- 13 -

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this ___23rd___ day of August, 2016.

_Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE